# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER JOYNER (#278693), ) | |
| ) | |
| PLAINTIFF, ) | CASE NO. 21-CV-00302 |
| ) | |
| V. ) | |
| ) | HON. SHARON JOHNSON COLEMAN |
| CORRECTIONAL OFFICER J. BALAS, ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Joyner, currently an Indiana state prisoner, brings this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff claims that an officer at the Stateville Correctional Center violated his constitutional rights by acting with deliberate indifference to his safety. Plaintiff alleges that Defendant watched without intervening during an inmate attack. This matter is before the Court for ruling on Defendant's motion for summary judgment. For the reasons discussed in this Order, the motion is granted.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this district. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted); *Massey v. Hardy*, No. 21 CV 0560, 2023 WL 2814768, at *1 (N.D. Ill. Apr. 6, 2023) (same) (citing *Delapaz*).

Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). Local Rule 56.1(d) requires that "[e]ach asserted fact must be

supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

In turn, the opposing party must respond to the movant's proposed statements of fact, either admitting or denying each factual assertion. *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015); *Kumar v. Accreditation Council for Graduate Med. Educ.*, No. 21 CV 2822, 2023 WL 22079, at *1 (N.D. Ill. Jan. 3, 2023). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material. "The courts are not required to wade through improper denials and legal argument in search of a genuinely disputed fact." *Smith v. Adams*, 804 F. App'x 390, 391 (7th Cir. 2020) (citation omitted); *Clemons v. Wexford Health Sources, Inc.*, No. 17 CV 0132, 2023 WL 2646705, at *2 (N.D. Ill. Mar. 27, 2023) (same). Mere disagreement with the opponent's factual statement is inadequate unless made with appropriate citation to the record. *Crowder v. Barrett*, No. 17 CV 0381, 2022 WL 864519, at *2 (N.D. Ill. Mar. 23, 2022), aff'd, No. 22-1899, 2023 WL 3145312 (7th Cir. Apr. 28, 2023) (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to Unrepresented Litigants Opposing Summary Judgment" as required by Local Rule 56.2. (Dkt. No. 77.) The notice explained how to respond to the summary judgment motion—or more specifically, Defendant's Statement of Material Facts. *Id.* But despite the instructions, Plaintiff failed to provide a response to the statement of facts that expressly admitted or denied Defendant's assertions numbered paragraph by numbered paragraph; he also failed to cite parts of the evidence that supported his

2

version of the facts in his own statement of facts. Plaintiff did submit a Declaration as an exhibit, but he did not tie individual factual assertions in his Declaration to either party's statement of facts.

Where, as here, Plaintiff has not responded (or has not properly responded) to a defendant's factual statements, the Court may deem them admitted to the extent they are supported by the record. *See Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) (unpublished) ("[T]he [district] court was entitled to strictly enforce the local rule, even against a *pro se* litigant, by deeming uncontroverted statements of material fact admitted for the purpose of deciding summary judgment."). Due to Plaintiff's *pro se* status, the Court will entertain his factual statements, but only to the extent they are supported by the record, or insofar as he could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 Supp. 2d 849, 854 (N.D. Ill. 2013).

## II. Relevant Facts

The following facts are largely uncontested: Plaintiff Christopher Joyner is a state prisoner; he was confined in Illinois' Stateville Correctional Center at all times relevant to this action. (Dkt. 75, Defendant's Rule 56.1(A) Statement of Material Facts, ¶ 1.) Plaintiff is currently an Indiana state prisoner. (*Id.*) Defendant Joseph Balas was a correctional officer at Stateville Correctional Center at the time of the events giving rise to this lawsuit. (*Id.*, ¶ 2.)

On February 12, 2020, Plaintiff worked out with two associates, after which the three prisoners began to jog around the recreation yard track. (Dkt. 78, Declaration of Christopher Joyner, p. 6, ¶ 3.) As the trio rounded a bend, three men accosted Plaintiff. (*Id.*, ¶ 4.) Two of the assailants began to stab Plaintiff with makeshift "shanks." (*Id.*; *see also* Def.'s SOF, ¶ 5.) Plaintiff tried to defend himself against the attackers and he endeavored to break away from them, but he was no match for the knife-wielding assailants. (Joyner Decl., ¶ 4.) His two workout partners offered no assistance; to the contrary, they fled as soon as the attack began. (*Id.*) The attack lasted some two minutes

before correctional officers converged to break up the fight. (*Id.*, ¶ 5; Def.'s SOF, ¶ 6.) Plaintiff was stabbed twenty-two times. (Dkt. 78, Plaintiff's Statement of Material Facts, ¶ 3.)

At the time of the outbreak of violence, Defendant was stationed in a guard tower that overlooked the recreation yard. (*Id.*, ¶ 8.) Defendant was able to partially view the skirmish from his vantage point. (*Id.*, ¶ 10.) He witnessed one of the assailants strike Plaintiff with his fist. (*Id.*) But Defendant's tower was some twenty to fifty yards away from where Plaintiff was located, and portable toilets partially obstructed his view.[1] (*Id.*, ¶ 11.) Defendant did not personally observe any weapons. (*Id.*, ¶ 12.)

Defendant was equipped with a Ruger Mini 14, a semi-automatic rifle.[2] (*Id.*, ¶ 9.) Defendant did not fire his gun at any time, either as a warning shot or aimed at an inmate. (*Id.*, ¶ 16.) Defendant was trained to use lethal force only to prevent death or great bodily harm, and only when no other reasonable means of intervention is available. (*Id.*, ¶ 17.) Plaintiff counters that prison regulations authorized the use of force under the circumstances of the present case because he faced grave bodily harm. (Plaintiff's SOF, ¶¶ 7-8.)

Defendant radioed his supervisor and called out a "10-10"[3] (i.e., fight in progress). (*Id.*, ¶ 13.) Defendant also claims to have shouted a command to the alleged assailants ordering them to stop the attack.[4] (*Id.*, ¶ 14.) Plaintiff did not hear Defendant shout out a verbal warning, and he does not

---

[1] Plaintiff may reasonably dispute the estimated distance between the watch tower and the site of the attack (20 yards vs. 50 yards); the Court will accept his estimate. (Dkt. 78, Plaintiff's Contested Statements, p. 3, ¶ 9.) However, as he was not actually in the watch tower that day (or, presumably any day), he cannot testify as to what Defendant was able to see and how much of his view was obstructed. Nor does Plaintiff have the personal knowledge to say that Defendant saw weapons or blood from his aerial view. (*Id.*, ¶ 10.)

[2] Plaintiff asserts that the cell tower was stocked with [unspecified] "lethal and non-lethal weapons." (Plaintiff's SOF, p. 5, ¶ 5.) But he points to no evidence on which that assertion is based.

[3] A "10–10" is a call used when there is an inmate-on-inmate fight and is meant to summon officers and supervisors for back-up and assistance. *Shields v. Dart*, No. 09 C 8077, 2011 WL 1897407, at *3 (N.D. Ill. May 11, 2011), *aff'd,* 664 F.3d 178 (7th Cir. 2011)

[4] Plaintiff cannot refute Defendant's attestation that he issued a verbal command to stop fighting. (Joyner Decl., ¶ 7.)

4

believe Defendant did so. (Plaintiff's Contested Statements, ¶ 11.) Plaintiff further maintains that no one would have heard Defendant's command from 50 yards away. (*Id.*)

Security personnel soon arrived on the scene and separated Plaintiff from the other individuals. (Def.'s SOF, ¶ 15.) Plaintiff spent three days in the hospital for treatment of stab wounds to his head, ear, neck, hands, and knee. (Joyner Decl., ¶ 5.)

Defendant visited Plaintiff in the medical wing, where Plaintiff spent some time recuperating after the confrontation. (*Id.*, ¶ 11.) Plaintiff asserts that Defendant told him that a lot of people might say what they would have done in Defendant's shoes, hinting that no one could ever know for certain unless he or she actually faced such an emergency. (*Id.*) Defendant went on to confess, "Truthfully, I panicked and didn't know what to do." (*Id.*) Plaintiff chided Defendant, observing that the officer's paralysis under pressure nearly cost Plaintiff his life. (*Id.*, ¶ 12.)

## DISCUSSION

### III.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 830 (7th Cir. 2019). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (citations omitted); *see also McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 666 (7th Cir. 2021). At the summary judgment stage, it is not the role of the courts "to evaluate the weight of the evidence, to judge the credibility of witnesses

---

At most, Plaintiff can say only that he did not *hear* the verbal warning—whether due to Defendant not having made it, the distance to the guard tower, or his mind being occupied on surviving the brutal assault.

or to determine the ultimate truth of the matter, but simply to determine whether there exists a genuine issue of triable fact." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818-19 (7th Cir. 2015) (citation omitted).

**IV.     Analysis**

No outcome-dispositive facts are in dispute, and the Court concludes that Defendant is entitled to summary judgment in his favor because Defendant's response to the unfortunate attack was not so inadequate as to reflect deliberate indifference to Plaintiff's safety. The Eight Amendment's proscription against cruel and unusual punishment includes a duty to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). "Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Id.* at 569. Rather, a prison official is liable for failure to protect an inmate "only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

An attack by three prisoners, two of whom were armed, was certainly an excessive risk to Plaintiff's safety. But even if Defendant knew that Plaintiff was at serious risk of harm, Plaintiff's claim fails because Defendant was not deliberately indifferent by disregarding that harm or failing to reasonably respond to the risk of harm. This case does not present the usual failure-to-protect scenario in which correctional officials are alleged to have failed to take appropriate steps to prevent a violent assault they knew was likely to occur. Instead, Plaintiff alleges that Defendant failing to appropriately respond at the onset of the attack.

6

Once an offender is under attack, an officer cannot just stand by and do nothing. *See Schillinger v. Kiley*, 954 F.3d 990, 994-95 (7th Cir. 2020). But "the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). And an officer is not required to take unreasonable risks to break up a fight. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011). For example, in *Shields*, the plaintiff was attacked by two knife-wielding detainees. A correctional officer stood in a secure area with a view of the room where the plaintiff was attacked. When the officer turned to see the plaintiff covered in blood, she did not immediately open the door or try to stop the attack. Instead, she called for reinforcements, who appeared 15 to 20 minutes later. *Id.* The Seventh Circuit affirmed the District Court's entry of summary judgment for the defendant, holding that the officer had no obligation to put herself in danger. *Id.* In addition, the officer took other steps to intervene, such as calling for back-up and monitoring the fight from a secure area until other officers arrived.

In light of circumstances, as evidenced by the undisputed facts viewed in the light most favorable to Plaintiff, Defendant's actions during and after the attack were reasonable. As in *Shields*, Defendant radioed for back-up and monitored the situation from the distance of the tower. He also shouted to the attackers to stop fighting. Plaintiff argues that Defendant should have fired his weapon at the attackers or discharged a warning shot within the correctional center. Defendant was not required to fire his weapon at the attackers even if he had authority to use deadly force. There are many reasons why an officer might not fire their weapon in such a situation—such as having a poor vantage point to safely shoot the target without harming others, including Plaintiff. Said otherwise, the authority to use deadly force does not create a duty to open fire. Therefore, Defendant's decision not to fire his weapon did not constitute deliberate indifference.

Moreover, Defendant's later statement of regret that he "panicked" and did not know what to

7

do during the attack does not amount to an admission of deliberate indifference. A defendant's admission that he did not take the best course of action in his eyes does not establish deliberate indifference. *See Lehn v. Reed*, No. 17-cv-435-wmc, 2022 WL 2238813, at *8 (W.D. Wis. June 22, 2022) ("[R]egret in hindsight is *not* evidence that [defendant] was aware of plaintiff's substantial risk of harm, nor that she consciously disregarded that risk."). Further, a defendant who acted with negligence or even gross negligence was not deliberately indifferent—"a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016); *see also Hawkins-El v. Hyatte*, No. 21-3152, 2022 WL 10327307, at *1 (7th Cir. Oct. 18, 2022) (unpublished) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)) (holding that a "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen'"). Simply believing that there was more that could have been done does not show recklessness. Regardless, the Court does not find that Defendant's actions were objectively reckless, as explained above.

Finally, for the sake of completeness, the Court also addresses Defendant's assertion that he is entitled qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Gray*, --- F.4th ---, No. 22-1501, 2023 WL 4836627, at *3 (7th Cir. July 28, 2023) (quoting *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017)) (cleaned up). Courts assess claims of qualified immunity under a two-part test. *Kemp*, 877 F.3d at 350. The plaintiff bears the burden of showing that (1) a statutory or constitutional right was violated, and (2) that right was clearly established at the time of the relevant conduct. *Id.*

8

In the case at bar, both factors weigh in favor of qualified immunity. For the reasons discussed in this opinion, Defendant did not violate Plaintiff's constitutional or statutory rights by failing to fire his rifle to put a halt to the attack. Even assuming for purposes of summary judgment that Defendant was aware Plaintiff was being stabbed, he acted perfectly appropriately in calling out a 10-10 and monitoring the situation. And even if Defendant did err, he did not violate a right that was clearly established at the time of the attack. As discussed more fully in the preceding section, it is well-settled that prison guards have a duty to take reasonable steps to protect inmates from violence at the hand of other inmates. But the Court is aware of no authority dictating that shooting a rifle at a recreation yard is one of those necessary, reasonable measures. Accordingly, for all the reasons discussed in this order, Defendant's motion for summary judgment is granted.

If Plaintiff wishes to appeal this ruling, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days

of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

Defendant's motion for summary judgment [74] is granted. The Court directs the Clerk to enter judgment in favor of Defendant and against Plaintiff pursuant to Fed. R. Civ. P. 56. The parties are to bear their own costs.

IT IS SO ORDERED.
DATED: 8/16/2023

SHARON JOHNSON COLEMAN
United States District Court Judge